**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GEORGE A. LOHMEIER**
Allen Wellman McNew, LLP
Greenfield, Indiana

ATTORNEY FOR APPELLEE:

**JUDY M. TYRRELL**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MAURA LEONARD, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  49A04-1208-DR-439 |
| | ) | |
| DAVID LEONARD, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
The Honorable Deborah J. Shook, Master Commissioner
Cause No. 49D04-1103-DR-10737

April 18, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-petitioner Maura Leonard (Wife) appeals the trial court's property distribution order in the dissolution of her marriage to her former husband, appellee-respondent, David Leonard (Husband). In particular, Wife challenges the trial court's award of two businesses to Husband, the percentage of marital assets awarded to the parties, and the method in which the trial court calculated Husband's income for child support purposes. Wife further contends that the trial court abused its discretion in setting aside one of the parties' automobiles to their adult child, and that the trial court erred in failing to include $4000 in the marital pot.

Although we find that the trial court erred in awarding the vehicle to the parties' adult child and that the cash should have been included in the marital estate, those errors were harmless. In all other respects, we find that no error occurred and we decline to set aside the dissolution decree. Thus, we affirm the trial court's judgment.

### FACTS

Husband and Wife were married on January 14, 1983. Six children were born during the course of the marriage, but only two are presently unemancipated. During the early years of the marriage, Husband was employed at a construction company, and Wife did not work outside the home. Sometime in late 1984, Husband was laid off from his job and started his own construction business, Anthony Builders, Inc. (ABI).

In 1991, Husband and Wife purchased a kennel business. Wife maintained the household, cared for the children and worked at the kennel. The family moved into a residence on that property and lived there for about two years. In 1994, the parties

2

bought Metro Storage, Inc. (Metro), from one of their neighbors. Metro is owned by a holding company, Whirlwind, Inc. (Whirlwind), that Husband and Wife also own. The family moved into a residence on property also owned by Whirlwind, and Metro and ABI were headquartered in a building there.

Husband keeps all of the heavy construction equipment on the premises that includes forklifts and trucks. ABI pays rent to Whirlwind when it can, and does not pay when it cannot. There is no lease or landlord demanding to be paid. The eight ABI employees report to work at the Metro location, and a full-time secretary who is paid by ABI manages the day-to-day operations of both entities. ABI employees perform all of the maintenance and repairs on the Metro facility. During the marriage, Wife worked in the business for a few hours on Wednesdays, when she paid the company's bills and made deposits. On occasion, Wife would come in one or two additional times per week to answer the telephone while the secretary was at lunch.

In 1999, the parties sold the kennel business on contract. The business sold for $165,000, and the land sold for $490,000. This sale enabled Husband and Wife to pay down some of their debt and purchase a lake house in Columbus. Thereafter, Husband and Wife purchased another residence in Indianapolis in December 2003.

As a result of the housing burst, the total income to the family in 2009 from all business entities amounted to $374,232. The total income in 2010 was $440,081, and $231,240 in 2011.

On March 18, 2011, Wife filed a petition for dissolution of marriage. On the date of separation, the net value of the marital estate exceeded $3.5 million. Husband retained possession of the marital residence in Indianapolis. Wife and two of the children moved into the Columbus lake house.

Sometime in May 2012, the parties' twenty-eight-year-old son, Berek, moved into Metro's conference room. Wife helped with the move and had the locks changed. Following an emergency hearing on Husband's motion for "Exclusive Possession," the trial court ordered Berek to vacate the property. Tr. p. 45. Two days later, Wife changed the pass codes on the business's computers.

After the parties separated but before the final hearing, Wife withdrew $50,990.24 from one Metro account, $20,095.92 from the Whirlwind account, and an additional $15,000 from another Metro account. Although Wife remarked that she was concerned that Husband might withdraw the money if she did not take it, she later admitted that he was not listed as a signator on the Whirlwind account. As a result of these withdrawals, Husband was left with $5000 in one account and $4200 in another.

Shortly before the final hearing, Wife started coming to the business on a daily basis rather than once a week. In light of this behavior, Husband characterized the atmosphere in the office as "very tense and just not . . . a very good environment to work in." Tr. p. 9.

The parties also own two other income-producing assets. More specifically, they own an unencumbered three-bedroom rental home near Purdue University that can be

4

rented to at least three students. Husband and Wife also receive nearly $1500 per month from the sale of the kennel, which will provide a steady stream of income until October 2021.

When the final hearing commenced, the parties stipulated to a list of various assets and their values. At the time of the hearing, Wife was forty-eight-years-old and was not disabled. In the past, Wife had earned close to $100,000 per year managing the kennel. Wife testified that she had not really looked for a job because she did not want to "start over." Tr. p. 179. In affording Wife credit for the actual current earnings on all properties that she was ultimately to be awarded, and imputing minimum wage to her, the parties' accountant calculated Wife's annual income at $26,515. The trial court also found that Wife "will have the option of receiving rental income from the West Lafayette property," and imputed additional income to her.

The trial court found that for purposes of determining child support, Wife's income was $36,115 per year. Also, because of the construction market's volatility, the trial court used Father's income in 2011 as the starting basis for calculating his child support obligation.

Husband testified that when the parties separated, he had approximately $4,000 in cash, which he used for personal expenses, in a safe. However, Husband omitted those funds from his balance sheet. Husband ultimately agreed to add $10,000 to his yearly income for the purposes of calculating child support.

5

Following the hearing, the trial court awarded ABI and Metro to Husband and awarded the Purdue rental property and the kennel contract to Wife. In addition to the Purdue house and the proceeds from the kennel contract, the trial court attributed none of the marital debt to Wife, awarded her an unencumbered five-bedroom house with a stipulated value of $450,000, brokerage accounts valued at approximately $441,727, a property settlement award of $413,000, and other miscellaneous assets, including the money she had withdrawn from the business accounts. The trial court awarded a Subaru automobile to one of the parties' adult children. Although Husband believed that he and Wife agreed to give this vehicle to their daughter and it was mentioned in the decree, it was not included on Husband's balance sheet. However, Husband asserts that Wife may keep the vehicle if she wishes to do so.

In the end, the trial court awarded approximately 54% of the assets to Wife and 46% to Husband. Wife now appeals.

## DISCUSSION AND DECISION

### I. Awarding Businesses to Husband

Wife argues that the trial court abused its discretion in awarding Husband both Metro and Whirlwind. Specifically, Wife contends that both businesses are income producing and that he can operate one of them and she can run the other. In light of these circumstances, Wife contends that the trial court's decision to impute income to her at minimum wage is not supported by the evidence and is not fair and reasonable.

Indiana Code section 31-15-7-4(b) provides that

6

[t]he court shall divide the property in a just and reasonable manner by:

> (1) division of the property in kind;
>
> (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;
>
> (3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale. . . .

The division of the marital estate lies within the sound discretion of the trial court. Bloodgood v. Bloodgood, 679 N.E.2d 953, 956 (Ind. Ct. App. 1997). We will reverse only when there has been an abuse of that discretion. Id.

Where, as here, the trial court issues findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), our standard of review is well-settled:

> First, we must determine whether the evidence supports the trial court's findings of fact. Second, we must determine whether those findings of fact support the trial court's conclusions of law. We will set aside the findings only if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts.
>
> In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. To make a determination that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made.

Hartley v. Hartley, 862 N.E.2d 274, 281 (Ind. Ct. App. 2007) (quoting Gregg v. Cooper, 812 N.E.2d 210, 214-15 (Ind. Ct. App. 2004)).

7

Our review of the record supports the trial court's decision to award Husband both businesses because there is no mortgage on the Metro property. Thus, refinancing is not necessary to protect the non-owner party's credit. Moreover, the evidence supports the trial court's finding that Husband performs all of the maintenance on the Metro property and he can "buy out" Wife's interest by way of a cash settlement within ninety days in one lump sum. Tr. p. 129; Appellant's Br. p. 19. Wife concedes that Husband keeps his construction equipment at the Metro business, and that she indicated to Husband after their separation that she could not feasibly maintain the property by herself.

In our view, the evidence set forth above and the findings that the trial court made supports the award of both Metro and ABI to Husband. Wife's arguments amount to requests that we reweigh the evidence, which we will not do. As a result, we conclude that the trial court did not err in awarding these two businesses to Husband.[1]

## II. Division of Marital Estate—Percentage

In a related issue, Wife argues that the trial court erred in awarding her only 54% of the marital estate and 46% to Husband. Specifically, Wife maintains that the trial court's division of the property was erroneous because the businesses that were awarded to Husband were income producing. As a result, Wife contends that she should have been awarded a greater percentage of the marital estate.

---

[1] As an aside, we again point out that the trial court awarded Wife the kennel contract that will provide her with $1,500 in monthly income until October 2021 and the unencumbered house near Purdue that she can rent to at least three students.

Indiana Code section 31-15-7-5 provides that the trial court shall presume that an equal division of the marital property is just and reasonable. However, a party may present relevant evidence to rebut the presumption of an equal division of the marital property by showing

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
> > (A) a final division of property; and
> >
> > (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5.

In this case, a portion of the trial court's decree provided that

17. Both parties contributed equally to the acquisition of their property. No evidence was presented by either party that substantial property was acquired before the marriage or by gift or inheritance. Neither party dissipated assets during the marriage, although the Wife did remove

9

substantial funds and set them aside in separate account(s). While each party is receiving substantial assets, the economic circumstances of each spouse highlight the fact that Husband has a greater earning ability than the Wife. Wife is receiving most of the liquid assets and two houses on which there are no mortgages; one of which is potentially "rental income producing"; however, both income producing businesses have been awarded to Husband. For these reasons, the court is dividing the marital estate approximately 54% to Wife and 46% to husband. . . .

Appellant's App. p. 19-20.

Wife challenges the above, claiming that Husband's economic circumstances as a result of the division of assets will be superior to hers. Notwithstanding Wife's contention, the record shows that Husband was awarded $1,671,929 in assets, and Wife was awarded $1,971.956 in assets. Because Husband has been awarded a substantially lesser amount of the liquid assets, his economic circumstances depend on an ability to continue to work extended hours in the construction industry.

Also, regardless of whether Wife seeks employment, she will live in a mortgage-free home, receive earnings from the kennel business for many years, have the potential to obtain rent from the Purdue property, and possess liquid assets in excess of $1 million, on which she will likely earn interest and/or dividends.

Under these circumstances, we cannot say that the trial court erred in awarding 54% of the marital estate to Wife. Therefore, Wife's claim that she should have been awarded a greater percentage of the marital estate fails.

10

Wife also argues that the trial court erred in calculating Husband's income to determine the amount of child support that he should pay.  Specifically, Wife argues that the trial court should have averaged the parties' incomes for 2009, 2010, and 2011, rather than only considering Husband's 2011 income.[2]

In resolving this issue, we note that the trial court may average a party's income over several years if that income fluctuates significantly from year to year.  Schaeffer v. Schaeffer, 717 N.E.2d 915, 917-18 (Ind. Ct. App. 1999).  However, it has been recognized that "by averaging income where there has been only upward movement in wages over the past five years, the trial court granted [the Husband] a windfall."  Id. at 917.  (Emphasis added).

As discussed above, evidence was presented at the final hearing regarding the recent downturn in the housing and construction markets.  For instance, the parties' accountant testified about the housing market that burst in 2008.  Tr. p. 65.  The accountant also works for other construction companies and has had three clients go out of business since 2008.  The evidence established that the downturn in the housing and construction markets was the likely cause of Husband's decreased income in 2011.  Id. at 86-87.

In our view, averaging Husband's income in these circumstances—where his income has substantially decreased because of the decline in the housing and construction

---

[2] As noted above, Husband agreed to add $10,000 to his 2011 yearly income for the purpose of establishing child support.

industries—would result in a windfall to Wife and a serious hardship to Husband. In short, Husband would likely be compelled to pay child support based upon money that he no longer earns. Given the current economy and the state of the housing industry, we conclude that the trial court did not abuse its discretion in using only Husband's income in 2011 for the purpose of calculating his child support obligation.

### IV. Award of Vehicle to Adult Child

Wife next argues that the trial court erred in awarding a marital asset—a Subaru Forester automobile—to one of the parties' children. Wife points out, and Husband agrees, that while this vehicle was mentioned in the decree, it was not included on the trial court's balance sheet.

Although Wife correctly asserts that the trial court lacked the authority to award a marital asset to a non-party, Husband believed that he and Wife had agreed to give the vehicle to their daughter. In any event, Husband asserts that "if Wife wishes to keep [the vehicle], she may keep it." Appellee's Br. p. 17. In light of Husband's response, we conclude that any error that might have occurred regarding the trial court's decision to award this vehicle to the parties' daughter is harmless.

### V. Cash Not Included As Marital Asset

Finally, Wife argues that the trial court erred in not including as a marital asset the $4000 that Husband had placed in a safe and used for personal expenses during the pendency of the dissolution. Wife does not ask for a particular remedy, but claims that

12

"to exclude these funds as a marital asset constitutes an abuse of discretion." Appellant's Br. p. 33.

Indiana Code section 31-15-7-4 provides that the trial court is to divide the assets of the marriage. Wife correctly points out that the trial court should divide "all" of the parties' property, and it does not have the authority to exclude a marital asset. Trackwell v. Trackwell, 740 N.E.2d 582, 584 (Ind. Ct. App. 2000).

At the final hearing, Husband testified that it would have been "fair and honest" to have included this money on the balance sheet that he submitted to the trial court. Tr. p. 244-45. Although we agree that the trial court erred in not including these funds as a marital asset in the decree, we find that its failure to do so is harmless error. Indeed, even if the trial court had awarded all of the cash to Husband, the percentage of the asset division would not significantly change. As Husband points out, if the $4000 is added to his column on the balance sheet, he will have $1,675,929 in marital assets, and Wife will have $1,971,956. In other words, Husband would receive 45.94% of the marital estate rather than the 45.88% that he was actually awarded. Both awards are less than the 46% the trial court stated that it was awarding him. Also, if the parties' daughter will not receive the Subaru vehicle, that is an additional asset that Wife will keep.

In our view, the inclusion of the vehicle and the non-inclusion of the cash are off-setting and de minimus. Thus, harmless error occurred, and we decline to reverse the trial court's judgment.

13

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.